646 F.2d 609
 207 U.S.App.D.C. 274
 Earl C. DAVIS, Petitioner,
v.
U. S. DEPARTMENT OF LABOR, Director, Office of Workman's
Compensation Programs, Respondents,
George Hyman Construction Company and Liberty Mutual
Insurance Company, Intervenors.
Richard W. GALIHER, Jr., Petitioner,
v.
GEORGE HYMAN CONSTRUCTION COMPANY, Employer,
and
Liberty Mutual Insurance Company, Carrier, Respondents.
 Nos. 78-2257, 78-2291.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Oct. 29, 1980.
Decided Dec. 22, 1980.
 
 Lawrence A. Levey, Los Angeles, Cal., with whom Ronald G. Nathan, Los Angeles, Cal., was on brief, for petitioner in case 78-2257.
 Richard W. Galiher, Jr., Washington, D. C., for petitioner in case 78-2291.
 Russell E. Bond, Washington, D. C., with whom James F. Bromley and Ellen A. Patterson, Washington, D. C., were on brief, for intervenors.
 Before ROBB, MIKVA and GINSBURG, Circuit Judges.
 Opinion for the Court filed by Circuit Judge GINSBURG.
 GINSBURG, Circuit Judge:
 
 
 1
 These consolidated petitions to review a decision of the Department of Labor's Benefits Review Board present three issues. First, the injured employee, Earl C. Davis, asserts that substantial evidence did not support the Board's finding of no permanent total disability. Second, Davis contends that in light of this court's ruling in Hastings v. Earth Satellite Corp., 628 F.2d 85 (D.C.Cir.), cert. denied, -- U.S. --, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980), the Board wrongly denied him additional compensation for periods of temporary total and permanent partial disability. Finally, the attorney who represented Davis below seeks award of an attorney's fee.[1] We conclude that substantial evidence supports the Board's determination of no permanent total disability. We remand to the Board, however, to reconsider Davis' claims for temporary total and permanent partial disability benefits and his attorney's claim for a fee.
 
 I. Facts
 
 2
 On August 11, 1965, a floor collapsed and fell on Earl C. Davis, a nineteen-year-old carpenter employed by the George Hyman Construction Company. The accident lacerated Davis' face and broke his pelvis and both legs. Davis demonstrated remarkable spirit and perseverance during his hospitalization and physiotherapy program. He managed to return to work on January 3, 1966. Davis worked for Hyman and several other construction companies during the next ten years, although he was never fully able to resume all duties he performed prior to the accident and a pain in his leg troubled him when he stood for long periods.
 
 
 3
 Hyman laid Davis off on April 29, 1976, at the same time the company laid off several other workers. Davis attempted thereafter to work on several small construction jobs, but completed only one of them. Continuing pain in his right leg led him, in July 1977, to visit a hospital emergency room. Shortly thereafter he consulted Dr. Dow, an orthopedic surgeon, about his leg pains. He also began seeing Dr. Frank, a psychiatrist who had treated him after the accident, because he was drinking excessively and had other emotional problems.
 
 
 4
 At the same time he was seeking orthopedic and psychiatric help, Davis sought additional disability payments from Hyman's insurer. The insurer had already paid Davis a total of $24,000: $1,520 in 1965 and 1966 for three periods of temporary total disability; $21,830 between 1966 and 1975 for a 35% permanent partial disability; and $650 for facial disfigurement. Payments to Davis had ceased in 1975 because Davis then reached the $24,000 ceiling that former section 14(m) of the Longshoremen's and Harbor Workers' Compensation Act[2] imposed on benefits for temporary total and permanent partial disabilities. Congress had repealed this ceiling in 1972;[3] however, the insurer apparently believed that the repeal did not affect workers injured before that year.
 
 
 5
 Davis argued before the Administrative Law Judge (ALJ) and Benefits Review Board that he was entitled to additional compensation on two theories. First, and most prominently, Davis claimed that he had been permanently disabled since his layoff in 1976. Since the ceiling on benefits never applied to payments for permanent total disability, Davis clearly would be eligible for additional compensation if he could prove permanent total disability. Second, Davis asserted that the repeal of the $24,000 ceiling was retroactive, making him eligible for additional temporary total or permanent partial disability payments.
 
 
 6
 The ALJ rejected Davis' claims. She found that he was not permanently and totally disabled and concluded that the 1972 repeal of the temporary total and permanent partial disability benefits ceiling did not apply to workers injured before that date. The ALJ also denied Davis' attorney a fee since he had not successfully prosecuted any claim on Davis' behalf. The Benefits Review Board affirmed the ALJ's decision.
 
 
 7
 Davis, appearing first pro se and then through new, court-appointed counsel, petitioned this court for review. The attorney who represented him before the ALJ and the Board petitioned for review of the denial of an attorney's fee. The petitions were consolidated for consideration by this court.
 
 II. Permanent Total Disability
 
 8
 The Benefits Review Board determined that substantial evidence supported the ALJ's finding of no permanent total disability. We reach the same conclusion. When administrative hearings began on Davis' claim, Davis was suffering from disabling leg pains. Surgery performed during the course of the hearings, however, apparently cured those pains. Davis' surgeon, Dr. Dow, testified that when he examined Davis on December 15, 1977, Davis' pains had ceased and "with reasonable medical certainty" Davis could return to work as a carpenter. Tr. 345-46.[4] Dr. Yochelson, a psychiatrist who examined Davis in November 1977, testified that Davis' emotional problems would not impair his ability to work. On the contrary, Yochelson urged Davis to return to work immediately and to continue therapy while working full time. Tr. 650-51. Davis' own psychiatrist, Dr. Frank, did express reservations about whether Davis was emotionally fit to work full time. Tr. 552, 556, 580. Even Frank, however, testified that if Davis felt he could return to work, a return to work would be therapeutic. Tr. 582. Davis, finally, testified that there was "no apparent reason" why he could not return to work immediately and that he would do so as soon as his doctors gave him the go ahead. Tr. 510-12. He adamantly maintained, moreover, that his alcoholism would not interfere with his work. On this record, therefore, we find ample evidence to support the ALJ's decision that Davis was not permanently and totally disabled.[5]
 
 III. Repeal of the $24,000 Ceiling
 
 9
 Both the ALJ and Benefits Review Board ruled that Congress' 1972 repeal of the $24,000 ceiling on payments for temporary total and permanent partial disabilities could not benefit Davis since he was injured before the repeal took effect. However, in Hastings v. Earth Satellite Corp., 628 F.2d 85 (D.C.Cir.), cert. denied, -- U.S. --, 101 S.Ct. 281, 66 L.Ed.2d 137 (1980), decided after administrative determination of Davis' case, this court held that the 1972 repeal applies to any worker who was receiving benefits on the effective date of the repeal. Davis received his last payment from Hyman's insurer in 1975. Under the reasoning of Hastings he is clearly eligible for additional temporary total or permanent partial disability payments.
 
 
 10
 Davis' counsel urges us to calculate the benefits that Davis is entitled to receive under Hastings. This we decline to do. At the administrative level, attention concentrated on the question whether Davis was permanently and totally disabled. The parties did not fully air the issues of temporary total or permanent partial disability. Therefore, we remand to the agency for consideration, in light of Hastings, of Davis' entitlement to further compensation for temporary total or permanent partial disability.
 
 
 11
 On remand, the agency should take a fresh look at Davis' claims of temporary total and permanent partial disabilities. Earlier findings as to those claims are not binding on the parties since they were made on the assumption, held erroneous in Hastings, that the law precluded recovery for anything short of permanent total disability. The parties need not resubmit evidence already in the record, but they should be free to present additional evidence relevant to Davis' temporary total or permanent partial disability claim. This method of proceeding will accord Davis a full and fair hearing, informed by this court's holding in Hastings, on those claims.
 
 IV. Attorney's Fee
 
 12
 The Longshoremen's and Harbor Workers' Compensation Act provides that if an attorney assists an employee "in the successful prosecution of (a) claim," the attorney shall receive a reasonable attorney's fee. 33 U.S.C. § 928(a) (1976). Richard W. Galiher, Jr., the attorney who represented Davis below, asserts that he is entitled to a fee because he successfully prosecuted Davis' claim in three respects. One of these contentions has merit.[6]
 
 
 13
 Galiher argued to the ALJ and Benefits Review Board that Congress' 1972 repeal of the $24,000 ceiling on benefits should apply retroactively to Davis. Because Galiher raised and pursued this point, we are remanding Davis' case for reconsideration in light of Hastings. If Davis ultimately receives payments for temporary total or permanent partial disability, it will be due in part to the work of Galiher. Galiher will then have contributed to the successful prosecution of a claim.
 
 
 14
 Just as we decline to determine the amount, if any, of benefits to which Davis is entitled, we decline to fix the amount of Galiher's attorney's fee. If Davis prevails on remand, the agency should set a reasonable fee, taking into account the degree of Galiher's contribution to any award Davis receives. We note only that if Davis ultimately receives some benefits for temporary total or permanent partial disability, Galiher will be entitled to a fee.
 
 Conclusion
 
 15
 We affirm the agency's finding that Davis suffers from no permanent total disability. We remand, however, for reconsideration of Davis' entitlement to temporary total or permanent partial disability payments and for computation of a reasonable attorney's fee for Galiher if Davis ultimately receives any such payments.
 
 
 16
 Affirmed in part and remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 Davis also asserts that the Administrative Law Judge conducted the hearings in a manner that deprived him of due process. This argument, however, was not made to the Board and is not sufficiently persuasive to merit reversal
 
 
 [2]
 Act of July 14, 1961, Pub.L.No.87-87, § 3, 75 Stat. 203 (repealed 1972)
 
 
 [3]
 Longshoremen's and Harbor Workers' Compensation Act Amendments of 1972, Pub.L.No.92-576, § 5(e), 86 Stat. 1251
 
 
 [4]
 Dow later qualified this statement by suggesting that Davis needed a "real trial of work" before anyone could be certain that Davis would experience no further physical problems. Tr. 370. Dow, however, thought that three months would be a sufficient trial period. Tr. 372. At most, therefore, this testimony would support a finding of temporary total disability, not one of permanent total disability. Cf. Fraley v. Todd Shipyards, Inc., 7 B.R.B.S. 162 (1977) (claimant and his doctor agreed that he was ready to return to work; Benefits Review Board awarded continuing temporary total disability until claimant actually returned to work and tested his ability under work conditions)
 
 
 [5]
 We reject Davis' suggestion that the Board was constrained to find a permanent total disability unless Hyman showed that Davis enjoyed actual employment opportunities. The employer need make this showing only if the employee shows that he can no longer perform his customary employment. See Perini Corp. v. Heyde, 306 F.Supp. 1321 (D.R.I.1969). The dispute in this case was about whether Davis could perform carpentry work. Since the evidence furnishes secure support for the finding that Davis was able to perform that work, there was no need for Hyman to show the availability of other employment
 
 
 [6]
 We reject Galiher's arguments that he is entitled to a fee for successfully refuting the insurer's statute of limitations defense or obtaining payment of a $115 medical bill. On the first point Galiher won a battle, but did not thereby win the war. The statute requires successful prosecution of a claim, not successful refutation of one defense to a claim. Galiher cannot prevail on the second point because the ALJ found, and we see no evidence to the contrary, that Davis did not request reimbursement for the $115 bill before the hearing. The statute authorizes award of an attorney's fee only if a claim has been made to the employer or insurer before commencement of administrative proceedings